IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**BILLY L. LITTLE,**

        Plaintiff,

        v.

**CAROLYN W. COLVIN,**
Acting Commissioner of the Social Security
Administration,

        Defendant.

**Civ. No. 6:14-cv-01680-MC**

**OPINION AND ORDER**

**MCSHANE, Judge**:

Plaintiff Billie Lee Little requests judicial review of a final decision of the Commissioner of Social Security that denied his application for disability insurance benefits (DIB) and supplemental security income payments (SSI) under Titles II and XVI of the Social Security Act (the Act).

The issues presented to this Court are (1) whether the Administrative Law Judge (ALJ) made a de facto reopening of Plaintiff's prior applications under Titles II and XVI of the Act; (2) whether the ALJ erred in failing to address Plaintiff's request to reopen his prior application for benefits due to Plaintiff's alleged physical and mental inability to appeal the denials; (3) whether the ALJ erred in failing to address the findings of Dr. Morrell or the opinion of Dr. Schmechel that Plaintiff was markedly impaired in his ability to accept supervision; (4) whether the ALJ failed to give clear and convincing reasons for rejecting Plaintiff's testimony; (5) whether the ALJ erred in discrediting the lay witness testimony of Christina Little, Plaintiff's wife; and (6)

1 – OPINION AND ORDER

whether the ALJ erred in finding there are jobs in significant numbers within the national economy that Plaintiff can perform. Because the ALJ failed to provide clear and convincing reasons for failing to consider the opinions and observations Dr. Scmechel, and failed to provide germane reasons for rejecting Ms. Little's testimony in reaching his determination, the Commissioner's decision is REVERSED, and this matter is REMANDED for further proceedings.

## PROCEDURAL BACKGROUND

Plaintiff applied for DIB on December 30, 2008, and for SSI on January 2, 2009. Tr. 84–85, 166.[1] These claims were denied on June 24, 2009. Tr. 85, 114. Plaintiff did not appeal, but re-applied for DIB January 6, 2011, alleging disability as of October 19, 2007. Tr. 204. Plaintiff requested a hearing after being denied initially and upon reconsideration, and appeared before the Honorable Anthony Johnson, Jr. on March 21, 2014. Tr. 119–22, 129–34. On April 16, 2013, Plaintiff requested the reopening of the prior applications, pursuant to SSR 91-5p. Tr. 165. Plaintiff's claim was ultimately denied on May 29, 2013. Tr. 14–31. Review of this decision was denied by the Appeals Council in August, 2014. Tr. 1-6.

## FACTUAL BACKGROUND

Plaintiff was born in October 26, 1971. Tr. 204. He is a high school graduate and has worked most recently as a dryer supervisor. Tr. 72–73, 235.

Plaintiff was diagnosed with major depression in 2006. Tr. 406–08. In October 2007, Plaintiff was found to have herniated discs in his back. Tr. 372. He had previously suffered a disc herniation that was successfully treated with surgery. *Id.* Plaintiff had a microdiscectomy

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed herein as ECF No. 8.

2 – OPINION AND ORDER

performed February 28, 2008, after less invasive treatment options failed. Tr. 389, 395. When his

medication failed to control his pain, Plaintiff was reevaluated by Clyde Keys, M.D. Tr. 412. Dr.

Keys noted that Plaintiff had gained 42 pounds and recommended that Plaintiff lose weight to

decrease pain. *Id.* Less than one month later, on January 3, 2009, Dr. Keys noted that Plaintiff

had gained an additional 12 pounds. *Id.*

On May 20, 2009, Plaintiff was examined by Jennifer Micek, D.O., for back pain and

depression. Tr. 432. During the examination, Plaintiff stated that he thought about suicide every

morning and continued to suffer low back pain radiating into his right buttock. *Id.* Plaintiff also

reported that after 30 minutes of walking he needed to lie down for a couple of hours. *Id.*

In June 2009, Plaintiff was examined by Linda Schmechel, Ph.D., at the request of the

Oregon Disability Determination Services (ODDS). Tr. 435. Dr. Schmechel noted that Plaintiff

had an angry look during examination. *Id.* Dr. Schmechel thought that Plaintiff's behavior

throughout his life reflected aspects of a personality disorder, including compulsive computer

gaming; paranoid thinking; and rigid expectations of others. Dr. Schmechel believed that the

combination of a lack of work and pain from physical injuries may have exacerbated this

personality disorder. Tr. 439. Dr. Schmechel noted that Plaintiff retained full ability to carry out

and understand both simple and complex instructions, but he would "not fare well in work that

requires cooperation with others or highly interpersonal work." Tr. 439. She also found that his

ability to accept supervision seemed "markedly impaired at present." *Id.* Plaintiff's "capacity to

manage funds was questionable" as he was "so preoccupied with proving himself not abusive to

children he might not attend payment deadlines." Tr. 440. Dr. Schmechel noted that, during the

examination, Plaintiff's personal subjective distress was extremely high. *Id.* Dr. Schmechel

diagnosed depression, adjustment disorder with anxiety, and mixed personality disorder

3 – OPINION AND ORDER

(obsessive-compulsive and paranoid traits). Tr. 440. She assigned Plaintiff a Global Assessment Functioning (GAF) score[2] of 46. *Id.*

The following day, Plaintiff was examined by Kurt Brewster, M.D., P.C., C.I.M.E., at the request of the ODDS. Tr. 441. Dr. Brewster noted that Plaintiff was in mild distress, walked with an antalgic gait, and transferred on and off of the examination table with difficulty. Tr. 447. Dr. Brewster also noted that Plaintiff "performs all activities of self-care" such as bathing and washing his hair. Tr. 445. Dr. Brewster further noted that Plaintiff performs one hour of yard work per day. Tr. 446. Dr. Brewster diagnosed low back pain status post multiple discectomies, recurrent herniation, and lumbar degenerative disc disease. Tr. 450. He found decreased sensation at S1 distribution on the right. *Id.* Dr. Brewster found Plaintiff generally credible with clinical documentation supporting the recurrence of pain and no drug-seeking behavior. *Id.* Dr. Brewster stated Plaintiff could walk for two hours in an eight-hour day, had no restrictions in sitting, and could lift a maximum of ten pounds frequently. Tr. 450–51.

On June 2 and July 6, 2009, Eric Morrell, Ph.D., examined Plaintiff at the request of Child Welfare Social Services. Plaintiff reported some mild symptoms of panic-like anxiety and some paranoia. Tr. 705. Plaintiff received a 1-2/2-1 profile code, suggesting a tendency to "exhibit physical symptoms with little demonstrable medical pathology." T.R. 711. According to Dr. Morrell, this profile code also suggests the use of subjective physical complaints "for self-serving gains." *Id.* The MMPI-2 was deemed "questionably valid," and Dr. Morrell noted that Plaintiff's "[n]arcissistic indicators approach but fall shy of clinical significance, as do antisocial,

---

[2] A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert,* 159 F .3d 1161, 1164 n.2 (9th Cir.1998) (citing *Diagnostic and Statistical Manual of Mental Disorders* 20 (rev. 3d ed. 1987)). A GAF score includes two components: symptom severity and functioning. *See Diagnostic and Statistical Manual of Mental Disorders* 32 (rev. 4th ed. 2000).

schizoid, schizotypal, and paranoid tendencies." *Id.* Dr. Morrell diagnosed dysthymic disorder; history of alcohol and cannabis abuse in sustained full remission, per self-report; history of adjustment disorder with disturbance of conduct in adolescents; perpetrator of childhood physical abuse; and personality disorder NOS (obsessive compulsive, aggressive, schizotypal/paranoid, narcissistic) with a GAF of 49-50. Tr. 713. Plaintiff appeared to have a low-grade chronic depression. Tr. 714. Plaintiff's therapist thought his mental state was improving, but Dr. Morrell noted that Plaintiff was not capable of "acknowledging his issues with [Dr. Morrell] during the evaluation" and presented as "suspicious, prone to blame others, and concretely focused on trivial details such as his medication as the culprit." Tr. 716.

In January 2010, Leslie Morey, Ph.D., administered a Personality Assessment Inventory (PAI) upon Plaintiff, and noted that certain indicators fell out of the normal range, suggesting that Plaintiff "may not have answered in a completely forthright manner." Tr. 539, 544. The PAI suggested the following diagnoses: adjustment disorder, unspecified; rule out dysthymic disorder; and personality disorder NOS (mixed personality disorder, with borderline, antisocial, paranoid, and schizoid features). Tr. 547. Dr. Morey noted that Plaintiff's self-description indicated "significant suspiciousness and hostility in his relations with others." Tr. 544.

In April 2011, Plaintiff saw Theresa Lundy, M.D., and reported constant back pain and left knee pain "occurring constantly with an intensity at [six]" out of ten. Tr. 670–71. Dr. Lundy noted that Plaintiff had done well on amitriptyline and did not know why he had quit taking the medication. Dr. Lundy diagnosed post laminectomy syndrome, and prescribed amitriptyline. Tr. 670.

Later in April 2011, Plaintiff was examined by Anthony Glassman, M.D., a physical medicine and rehabilitation specialist. Tr. 658. Plaintiff reported being depressed but not

5 – OPINION AND ORDER

suicidal, and he refused antidepressants. *Id.* Plaintiff reported that Naprosyn gave him 50% pain relief and that his pain was "decreased by lying down and exacerbated by any kind of loadbearing." *Id.* Dr. Glassman noted that his gait was antalgic on the right. Tr. 659. Dr. Glassman diagnosed degenerative disc disease status post laminectomy with residual scar tissue and recurrent herniation, producing sciatic symptoms and obesity. *Id.* Objective evidence led to a showing of decreased sensation in Plaintiff's right lateral foot and an absent Achilles tendon reflex. *Id.* Dr. Glassman stated that Plaintiff was capable of lifting 35 pounds occasionally and 20 pounds frequently, and could walk up to one half hour at a time or a total of two hours in an eight-hour day. *Id.*

In June 2011, Plaintiff again visited Dr. Lundy and reported Naprosyn and amitriptyline were no longer helping his symptoms and that he was still very depressed and frustrated with his "lack of ability to get disability" during a medical visit at the UCHC Roseburg Clinic. Tr. 698.

In March 2012, Plaintiff was examined by Kelli Gaffield, a nurse practitioner in Dr. Lundy's office who noted he leaned to the right and was not able to sit more than five or ten minutes, and could walk about fifteen minutes before needing to rest. Tr. 693–94. Plaintiff reported to Gaffield that he was able to do much more walking and stretching until falling in April 2012, requiring an injection of lidocaine and kenalog. Tr. 689. In July 2012, Plaintiff reported worsening right leg and sciatic pain, stating that he was performing "all the stretching and feels good relief from that," but that walking was "excruciating." Tr. 685. Gaffield noted that sitting was very difficult for Plaintiff and he could only tolerate standing if not bearing weight on his right leg. Tr. 686. She gave Lyrica samples which, as Plaintiff later reported to Gaffield in August 2012, "worked wonders" for the sciatic pain." Tr. 682–83. Gaffield noted that the status of his depression was "[c]ontrolled," and that Plaintiff's obesity and sciatica were improving. Tr.

6 – OPINION AND ORDER

682. During this period, Plaintiff was "able to walk one and one half miles per day and do all the chores and activities he was previously unable to do." Tr. 683.

In February 2013, Plaintiff sought urgent care for an acute lower back flare up. Tr. 718. He reported that his pain was usually well-maintained with medication, but that he had done extra walking that day. *Id.*

## DISABILITY ANALYSIS FRAMEWORK

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The initial burden of proof rests upon the claimant to meet the first four steps. If a claimant satisfies his or her burden with respect to those steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner bears the burden of demonstrating that the claimant is capable of making an adjustment to other work after considering the claimant's RFC, age, education, and work experience. *Id.* "If the Commissioner fails to meet this burden, then the claimant is disabled. If, however, the Commissioner proves that the claimant is able to perform work that exists in significant numbers in the national economy, then the claimant is not disabled." *Carroll v. Colvin*, No. 6:12-cv-02176-MC, 2014 WL 4722218, at \*2 (D. Or. Sep. 19, 2014).

## SUMMARY OF ALJ FINDINGS

At the first step of the five-step sequential evaluations process, the ALJ found that

Plaintiff did not engage in substantial gainful activity at any time following his alleged onset date

of October 20, 2007. Tr. 18. The ALJ then proceeded to the second step of the analysis.

At the second step, the ALJ found that Plaintiff suffers from the following impairments:

degenerative disc disease status-post laminectomy, failed back syndrome, obesity, depression,

anxiety, and a personality disorder. *Id.*

At the third step, the ALJ found that none of Plaintiff's impairments were the equivalent

of any of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. Tr. 18. The ALJ therefore

properly conducted an assessment of Plaintiff's residual functional capacity (RFC).

Specifically, the ALJ found that Plaintiff retains

> The residual functional capacity to lift/carry al least 10 pounds,
> walk and stand for a total of two hours of an eight-hour workday,
> and sit for six hours of an eight-hour workday. These functional
> abilities are consistent with sedentary work. The claimant's
> subjective complaints of lower back and leg pain and other
> subjective symptoms may limit him to only sedentary exertion. He
> may also require work allowing alternating sitting/standing due to
> his allegations that he is unable to sit for prolonged periods.

Tr. 23. The ALJ further limited Plaintiff's RFC to unskilled jobs.

At the fourth step of the five-step process, the ALJ found that Plaintiff was unable to

perform any of his past relevant work. Tr. 23.

At the fifth step, after considering the Plaintiff's RFC, age, education, and work

experience in conjunction with the Medical-Vocational Guidelines, 20 C.F.R. pt. 404 subpt. P,

app. 2m, the ALJ found there were jobs existing in significant numbers in the national and local

economy that Plaintiff was able to perform. Tr. 24. The vocational expert (VE) indicated, given

8 – OPINION AND ORDER

Plaintiff's limitations, that he could perform the occupations of stuffer, polisher, and final assembler. Tr. 24. On that basis, the ALJ concluded that Plaintiff was not disabled as defined in the Act at any time between October 20, 2007, and May 29, 2013. Tr. 24–25.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). To determine whether substantial evidence exists, this Court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner.'" *Gutierrez v. Comm'r of Soc. Sec.* 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998)).

## DISCUSSION

Plaintiff contends that the ALJ's decision is not supported by substantial evidence and is based on an application of incorrect legal standards. In particular, Plaintiff argues that: (1) the ALJ made a de facto reopening of Plaintiff's prior applications under Titles II and XVI of the Act; (2) absent a de facto reopening, the ALJ failed to address Plaintiff's request to reopen his prior application for benefits due to his physical and mental inability to timely appeal the denials; (3) the ALJ failed to address the findings of Dr. Morell or the opinion of Dr. Schmechel that Plaintiff was markedly impaired in his ability to accept supervision; (4) the ALJ erred in failing to give clear and convincing reasons for rejecting Plaintiff's testimony; (5) the ALJ erred in

failing to credit a lay witness's testimony; and (6) the ALJ erred in finding that there are jobs in significant numbers within the national economy that Plaintiff can perform.

I.      **De Facto Reopening of 2008 and 2009 Applications**

When an ALJ reopens a prior adjudication by considering "on the merits" whether a claimant was disabled during an already-adjudicated period, the Commissioner's decision regarding the prior period is subject to judicial review. *Lester v. Chater*, 81 F.3d 821, 827 n. 3 (9th Cir. 1995). Plaintiff argues that the ALJ made a de facto reopening of Plaintiff's previous denials because the ALJ failed to note Plaintiff's previous applications, did not address reopening in his decision, and accepted Plaintiff's alleged onset date of October 20, 2007, without comment. The Commissioner responds that references to October 2007 are insufficient to constitute a reopening of a previously adjudicated period, and amounts to nothing more than a harmless error.

Generally, when the Commissioner does not expressly reopen a decision as to an earlier period, that decision is not subject to judicial review. *Id.* at 827. There is an exception to this general rule, however, where the Commissioner considers the issue of a plaintiff's disability during the already-adjudicated period "on the merits." *Lewis v. Apfel*, 236 F.3d 503, 510 (9th Cir. 2011).

The ALJ knew of the previous denial of Plaintiff's applications for the period of October 19, 2007–January 6, 2011, yet he nonetheless considered evidence of disability on June 16, 2009, which fell within an already-adjudicated period of that date range. Tr. 21, 434. By considering a period of disability that included an already-adjudicated period, the ALJ de facto reopened the previous proceedings. *See Lewis*, 236 F.3d at 510. Moreover, the ALJ's decision explicitly determines the Plaintiff "has not been under a disability . . . from October 20, 2007, through

10 – OPINION AND ORDER

[May 29, 2013]." Tr. 24–25. When an ALJ considers evidence of disability that predates a previous denial of disability, and the ALJ accepts "without comment the alleged onset date," it is appropriate to treat the ALJ's actions as a de facto reopening. *Lewis*, 236 F.3d at 510. I find that the ALJ reopened the two prior claims by considering evidence related to an already-adjudicated period. On remand, the Commissioner must consider all evidence relevant to Plaintiff's case from October 20, 2007, onward.

## II.    Plaintiff's Mental Capacity and Alleged Inability to Appeal

Plaintiff contends that the ALJ erred in failing to reopen the 2009 denials of his prior application because he lacked mental capacity to contest the denials. In response, Defendant argues that Plaintiff failed to present a colorable constitutional claim that he lacked the mental and physical capacity to appeal the denials of his prior applications. The Court has already determined that the ALJ de facto reopened Plaintiff's prior denials. This argument is therefore largely moot. This issue is nonetheless relevant to the extent Plaintiff may attempt to reassert his allegations. Accordingly, I address them below.

The Act limits judicial review of Commissioner's decisions to those considered final decisions made after a hearing. 42 U.S.C. § 4059(g). A decision to not reopen a prior final decision is discretionary and not considered a final decision, and is therefore not subject to judicial review. *Califano v. Sanders,* 430 U.S. 99, 107–09, 51 L. Ed. 2d 192, 97 S. Ct. 980 (1977). In *Sanders*, the Supreme Court recognized an exception to the general rule where a colorable constitutional claim is made. *Id.* at 109. The *Sanders* exception applies to any colorable constitutional claim that implicates the right to a meaningful opportunity to be heard. *Evans v. Chater*, 110 F.3d 1480 (9th Cir. 1997).

In this case, Plaintiff asserts that he missed deadlines due to his alleged lack of mental capacity to understand the procedures for requesting review. In making a determination as to whether Plaintiff lacked mental capacity to understand the procedures for requesting review, four factors must be considered: (1) inability to read or write; (2) lack of facility with the English language; (3) limited education; and (4) any mental or physical condition which limits the claimant's ability to do things for him/herself. SSR 91-5p, *available at* 1991 WL 208067. The adjudicator will "resolve any reasonable doubt in favor of the claimant." *Id.*

Understanding appointment times and dates are not dissimilar to complying with filing deadlines. On June 6, 2009, Plaintiff was able to drive himself to a psychological evaluation. Tr. 435. The record reflects Plaintiff is capable of understanding appointment times and dates and has, on occasion, "arrived a half hour early" for appointments. Tr. 436. Plaintiff asserts that he was severely limited at the time his disability claim was denied due to being "preoccupied with proving he was not abusive to children." Tr. 440. The Court does not find emotional preoccupation sufficient to rise to the level of incapacity.

Plaintiff also argues that Dr. Schmechel's observations that Plaintiff had an angry look and constantly wrung his hands throughout the session are indicative of Plaintiff's mental incapacity. Tr. 436. The court does not find that anger or nervous ticks such as wringing one's hands rise to the level of incapacity. Plaintiff's alleged inability to manage funds cannot reasonably be equated to a complete incapacity or inability to make a filing for extension of time. Moreover, Plaintiff's extreme drive to prove himself a worthy parent points to capability more so than incapacity. If Plaintiff can, as he contends, care for his children, his claim that he cannot take care of himself is contradictory.

On this record, the Court concludes Plaintiff does not allege a colorable constitutional claim that he lacked the mental capacity to understand the procedures for requesting review.

**III.    The Testimony of Doctors Schmechel and Morell**

Plaintiff next claims the ALJ erred in failing to address the opinions of Drs. Morrell and Schmechel. The Commissioner responds that the opinions and findings of the two doctors are outside the relevant time period, and thus the probative value of the two opinions is insignificant. The Court rejects Commissioners response, as the opinions of the doctors fall well within the alleged disability start date beginning October 20, 2007. Tr. 17. However, while the Court finds that the ALJ erred in failing to address the opinion and findings of Dr. Schmechel, he did not err in failing to address the opinion and findings of Dr. Morrell as it is consistent with the ALJ's opinion.

Where there is conflicting medical evidence in the record, "the ALJ is charged with determining credibility and resolving any conflicts." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been property discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). An ALJ may only reject an uncontradicted examining doctor's opinion for clear and convincing reasons. *Lester*, 81 F.3d at 830.

Plaintiff contends that Dr. Morrell's psychological assessment was not accounted for in the ALJ's opinion. After careful review of the record, I find that the ALJ appropriately considered Dr. Morrell's opinion. As Dr. Morell noted, Plaintiff's narcissistic indicators "approach but fall shy of clinical significance, as do [his] antisocial, schizoid, schizotypal, and paranoid tendencies." Tr. 711. Dr. Morrell's opinion is consistent with the ALJ's findings as both conclude that Plaintiff's indicators fell short of clinical significance. If a doctor's reports are not

13 – OPINION AND ORDER

probative, the ALJ is not duty-bound to discuss them. *See Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984). I find no error in the ALJ's treatment of Dr. Morrell's opinion.

Plaintiff further contends that Dr. Schmechel's opinion was not accounted for in the ALJ's determination. This contention is well taken. In order to properly reject Dr. Schmechel's opinion, the ALJ needed to provide clear and convincing reasons for doing so. *Lester*, 81 F.3d at 830.

During the ALJ's discussion with the VE, the ALJ asks if there are jobs available to a hypothetical individual who is "limited to working with things rather than people or data." This minor allusion to Dr Schmeckel's opinion that Plaintiff would not fare well in a setting requiring cooperation with others or highly interpersonal work does not serve as a rejection of her opinion. The ALJ failed to provide specific and legitimate reasons for rejecting the opinion and findings of Dr. Schmechel supported by substantial evidence. On remand, the ALJ must consider the opinions and findings of Dr. Schmechel.

## IV.    Plaintiff's Testimony

Plaintiff contends that the ALJ erred in evaluating his credibility. In response, the Commissioner argues that Plaintiff's testimony regarding the limiting effects of his impairments were not fully credible and was contradicted by the evidence in the record. The Commissioner highlights Plaintiff's generally normal examination results as well as evidence in the record that Plaintiff was able to care for his own needs.

An ALJ must consider a claimant's symptom testimony, including statements regarding pain. *See* 20 C.F.R. §§ 404.1529, 416.929. The extent to which such testimony is probative and

can be relied upon "depends on the credibility of the statements." SSR 96-7p *available at* 1996 WL 374186.

In making a determination regarding Plaintiff's testimony, the ALJ was required to provide "specific, clear and convincing reasons" for rejecting Plaintiff's testimony. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). An ALJ may consider the claimant's tendency to exaggerate symptoms, *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001), and may discount a claimant's complaints of pain when the ALJ reasonably inferred from the medical record that claimant's pain symptoms are well-controlled by medical treatment. *Celaya v. Halter*, 332 F.3d 1177, 1181 (9th Cir. 2003). An ALJ may also consider a claimant's "reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. SSA*, 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Brunell v. Sullivan*, 947 F.2d 341, 345–56 (9th Cir. 1991) (en banc)). In deciding whether to credit Plaintiff's testimony, the ALJ "must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Barring evidence of malingering, if a claimant meets the *Cotton* analysis,[3] "the ALJ can reject the claimant's testimony about the severity of [his] symptoms by offering clear and

---

[3] The *Cotton* analysis "imposes only two requirements on the claimant: (1) [he] must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom." *Smolen*, 80 F.3d at 1282 (citing *Cotton v. Bowen*, 799 F.2d 1403, 1407–08 (9th Cir. 1986)).

convincing reasons for doing so." *Id.* (citing *Dodrill v. Shalala*, 12 F.3d 915, 918. (9th Cir. 1993). This Court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation," *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995), and "may not engage in second-guessing," *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Here, the ALJ noted that the evidence could reasonably "be expected to cause some of the alleged symptoms; however the claimant's statements and witness testimony concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely credible." Tr. 22. In coming to this conclusion, the ALJ noted that Plaintiff's pain was greatly improved with medication, and he was able to walk a mile and a half per day and do "all the chores . . . he was previously unable to do." Tr. 22, 682–83. Plaintiff testified his medications continue to help with pain. Testimony that Plaintiff's medication continues to help with pain directly contradicts Plaintiff's testimony that his pain, on a one to ten scale, was an eight out of ten "all the time." Tr. 50. The ALJ noted that a consultative medical exam in April 2011 "was generally within normal limits except for right leg neurological findings" and that Plaintiff was able to heel walk and toe walk without difficulty. Tr. 22, 669. Plaintiff was able to take care of his basic needs, as well as use a computer and drive a car. Tr. 22, 317–19. When his pain is properly medicated, Plaintiff is able to walk a mile and a half. Tr. 682–83. Plaintiff has not recently required any hospitalizations or surgeries. Tr. 22.

Based on this record, the Court finds that the ALJ did not err in discrediting Plaintiff's statements related to the intensity, persistence, and limiting effects of his symptoms. The ALJ did not arbitrarily discredit Plaintiff, and provided clear and convincing reasons for disregarding Plaintiff's testimony.

16 – OPINION AND ORDER

IV.    **Lay Witness Testimony**

Plaintiff contends that the ALJ erred in failing to address the lay witness testimony of Christina Little, Plaintiff's wife. In response, the Commissioner argues that the lay witness testimony of Plaintiff's wife was neither probative nor material. The Commissioner also argues that the lay witness testimony does not fall within the relevant time period. As a preliminary matter, I reject the latter argument, as the lay witness testimony occured after October 20, 2007, Plaintiff's alleged disability onset date. I analyze the former argument below.

The ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis . . . if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (citations omitted).

During the administrative hearing, Christina Little testified that Plaintiff, during certain periods, was "constantly in pain" and was unable to "keep up with the housework." Tr. 62–63. Ms. Little testified that her husband is only able to sit in a straight back chair for "15 minutes tops." Tr. 64. Ms. Little has to remind Plaintiff to dress, bathe, and groom himself. Tr. 66.

The Court finds Ms. Little's testimony probative and material. The ALJ failed to provide germane reasons for rejecting the Ms. Little's testimony, which was contradictory to the ALJ's finding. On remand, the ALJ must consider Ms. Little's testimony and factor it into his disability analysis or, alternatively, provide germane reasons for rejecting Ms. Little's testimony.

V.    **Plaintiff's Ability to Work in the National Economy**

In order to meet the burden placed on Commissioner in step five of the of the five-step sequential evaluations process, Commissioner must prove that claimant can perform a significant number of other jobs in the national economy either through: 1) the testimony of a VE; or 2) by

17 – OPINION AND ORDER

reference to the Medical Vocational Guidelines in 20 C.F.R. pt. 404, subpt. P, app. 2. *See Tacket v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). Work that exists in the national economy is defined as "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §1382(a)(3)(B). The VE is asked to identify other work a hypothetical individual could perform that has the same age, education, background, and work history as the claimant. In order for the testimony of a VE to be determined to be reliable, the hypothetical posed must include "all of the claimant's functional limitations, both physical and mental" that are supported by the record. *Flores v. Shalala*, 49 F.3d 562, 570–71 (9th Cir. 1995).

I need not address this argument because it is rendered moot by my above findings. However, Ninth Circuit precedent defers to an ALJ's supported finding that a particular number of jobs in the claimant's region was "significant." *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (holding a reviewing court must uphold the ALJ's decision if it is supported by "substantial evidence . . . a highly deferential standard of review"); *Martinez*, 807 F.2d 775 (Whether a significant number of jobs exist that claimant is able to perform "is a question of fact *to be determined by a judicial officer*." (emphasis added)). In *Thomas*, the Ninth Circuit upheld an ALJ decision that a claimant was not disabled because claimant could perform "one of 622,000 jobs in the national economy and 1,300 jobs in Oregon." 278 F.3d at 960.

/ / /

/ / /

/ / /

/ / /

## CONCLUSION

For these reasons, the Commissioner's final decision is REVERSED and this matter is REMANDED for further proceedings. Upon remand, the ALJ shall consider evidence and testimony in the record from October 20, 2007, onward, and must consider the opinions and observations of Dr. Schmechel and the lay witness testimony of Ms. Little.

IT IS SO ORDERED.

Dated this ⎯ day of February, 2016.

**Michael J. McShane**
**United States District Judge**